# Richmond.

## PACE v. MOORMAN AND OTHERS.

### FEBRUARY 12, 1901.

1. MECHANIC'S LIEN—*Equitable Estate of Owner—Judgments—Conflict of Liens.*—If the owner of the full equitable estate in land causes buildings to be erected thereon, for the cost of which a mechanic records a lien, such lien, by the terms of section 2483 of the Code, takes priority, as to both land and buildings, over all liens thereafter acquired on the lands of such owner, and also over all judgments thereafter recovered against the grantor of such owner holding the mere legal title to the land. If the mechanic's lien has been enforced by sale of the property, the purchaser has the right to stand in the shoes of the mechanic before the sale.

2. MECHANIC'S LIEN—*Unrecorded Title of Owner—Subsequent Judgments—Code, Secs. 2483 and 2465.*—The effect of section 2483 of the Code is to modify the registry law as contained in section 2465 so far as to give priority to a mechanic's lien on the lands of the grantee who has failed to record his deed over judgments subsequently obtained against his grantor.

Appeal from a decree of the Circuit Court of the city of Lynchburg, pronounced March 10, 1900, in a suit in chancery, wherein the appellee, Moorman, was the complainant, and the appellant and others were the defendants.

*Reversed.*

The opinion states the case.

*Diggs & Perkins*, for the appellant.

*Lee & Howard*, for the appellees.

HARRISON, J., delivered the opinion of the court.

In March, 1889, C. R. Moorman conveyed an undivided moiety of land to the Lynchburg Land Company. This deed was not recorded until October, 1897. Soon thereafter, the grantee conveyed its purchase to the West Lynchburg Land Company. This last named company, having become the owner of the other moiety, divided the whole tract into lots and manufacturing sites, and in May, 1891, conveyed one of these sites to the Valley Engine and Machine Company. In July, 1891, G. W. Talley filed a mechanic's lien for $6,283.73, being the amount due him for shops erected on this site under a contract with the Valley Engine and Machine Company, and subsequently brought suit to enforce his lien. At a sale made under a decree in that suit, the West Lynchburg Land Company became the purchaser, but before a deed was made, appellant acquired all the rights of the West Lynchburg Land Company, and the court appointed a commissioner to convey her the property, which was done by deed recorded in March, 1895.

In March, 1897, M. N. Moorman recorded a judgment against C. R. Moorman, and had the same docketed. The deed from C. R. Moorman, dated March, 1889, conveying his undivided moiety in the land to the Lynchburg Land Company, not being recorded, the judgment creditor brought this suit to enforce the lien of his judgment against certain alienees of said undivided moiety, including the manufacturing site derived by appellant through the mechanic's lien suit.

The right of the judgment creditor to subject either the land in question, or the buildings thereon, is denied, and is the sole question presented for decision.

In considering this question, appellant must be regarded as standing in the shoes of the mechanic, and invested with all the rights that he had under the law by virtue of his lien. These rights passed to the purchaser of the property from the court in the suit brought to enforce the mechanic's lien. The question is, therefore, the same that it would be if the mechanic had him-

self bought the property at the judicial sale, and it was now sought to subject the same in his hands.

Section 2483 of the Code provides, in part, that " no lien or encumbrance upon the land created before the work was commenced or materials furnished shall operate upon the building or structure erected thereon or materials furnished for and used in the same, until the lien in favor of the person doing the work or furnishing the materials shall have been satisfied; nor shall any lien or encumbrance upon the land created after the work was commenced or materials furnished operate on the land or such building or structure until the lien in favor of the person doing the work or furnishing the materials shall have been satisfied."

We are only concerned here with the latter part of the provision quoted, which is that no lien or encumbrance upon the land created after the work was commenced, or materials furnished, shall operate upon the land or the structure until the lien in favor of the person doing the work or furnishing the materials shall have been satisfied. The judgment lien sought to be enforced in this suit was obtained five years after the suit to enforce the mechanic's lien was instituted, and two years after the appellant had received her deed in pursuance of the decree in that case.

If the mechanic's lien had not been enforced, and was still unsatisfied, then, under the express terms of the statute, this after-acquired lien could not operate upon the land or the structure until the lien in favor of the mechanic had been satisfied. This must also be true where the lien has been enforced and the mechanic, or some one who stands in his shoes, has bought the property, otherwise the statute would fail to afford the mechanic that protection which is its prime and only purpose. The provision that no after-acquired lien shall prejudice the lien in favor of the mechanic would be of little value if, after he became the purchaser, such after-acquired lien could fasten upon the

property in his hands, and thereby deprive him of the benefit of his lien.

If the land in question had not been sold by C. R. Moorman, and the buildings had been erected thereon under a contract with him, this after-acquired lien could not, according to the letter and spirit of the statute, operate as a lien upon the land or buildings until the mechanic's lien had been satisfied. It would seem that the judgment creditor, in a case like this, should have no greater rights against the land in the hands of a purchaser from his debtor than he would have had if the land still belonged to his debtor.

Appellee contends that the intent of the statute was to deal only with the liens existing at the time of the distribution of the fund arising from a sale of the property upon which the mechanic's lien rested, and to fix the relative priorities between such liens. The language of the statute is, " nor shall *any lien* or encumbrance upon the land *created after* the work was commenced," etc. The section divides the liens or encumbrances into two classes—those existing upon the land prior to the commencement of the work, and those created after that time. There is no limitation as to how long before, or how long after, the commencement of the work, the lien must be created to come within the purview of the statute.

It is further contended by appellee that it was not the purpose of the Legislature to make the status of a purchaser, at a sale to enforce a mechanic's lien, different from that of a purchaser at any other judicial sale; that the registry laws are as binding upon such a purchaser as upon all other purchasers. The statute in question is a wise and beneficent one, and its sole purpose, which was to secure a deserving class of citizens the reward of their labor, is too clear to admit of doubt. A spirit of equity and right characterizes the statute throughout. The lien of the prior encumbrancer is carefully preserved to him upon what the debtor had, before the mechanic expended his labor and

material; and the mechanic, being prior in time as well as right, is given precedence upon both land and buildings as between himself and the subsequently created lienor.

It is suggested that, under section 2483, the mechanic has a lien only upon such interest in the land as his debtor had, and that by reason of the non-recordation of the C. R. Moorman deed, his debtor had less than a fee simple estate therein. The mechanic's debtor had a fee simple title to the land free from all encumbrance at the time the work was done. Conceding that, by reason of the registry law, his title might thereafter be impaired, if assailed, by a creditor of his grantor, yet as to the mechanic, the judgment against his debtor's remote grantor would, in contemplation of section 2483, be as much an after-acquired lien as if it had been obtained against the debtor himself.

It is true that but for section 2483, giving the mechanic these rights, the appellee would be entitled, under the registry law (section 2465 of the Code), to enforce the lien of his judgment against both the land and buildings in the hands of the alienee of his debtor, as a result of the failure of the Lynchburg Land Company to record its deed, until after the judgment was obtained.

The object, however, of section 2483 being to secure specific rights to a distinct and limited class, it necessarily removed the beneficiaries of those rights from under the operation of the general law where there was a conflict. The effect, therefore, of section 2483 is to modify section 2465, so far as the lien of the mechanic is concerned. Otherwise, the purpose to protect the mechanic would fail. To give section 2465 its general application in a case like this would violate both the letter and spirit of section 2483, and destroy the lien of the mechanic. His lien having attached long prior to the date of the judgment here asserted, he has the superior equity, as well as the mandate of the law, in his favor.

It being conceded at bar that the mechanic's lien amounts to far more than the value of the property involved, no question can arise as to the right of appellee to have a resale for the purpose of subjecting any surplus, after satisfying the mechanic's lien. Whether or not such right to resell would exist under the facts of this case, even if it were supposed that a surplus might arise, is a question as to which no opinion is expressed.

For these reasons the decree appealed from is reversed, and this court will enter such decree as the lower court should have rendered, dismissing appellee's bill with costs.

PHLEGAR, J., dissenting:

Section 2483 of the Code, so far as applicable to this case, is:

" If the person who shall cause such building to be erected owns less than a fee simple estate in such land, *then only his interest therein shall be subject to said lien.* No lien or encumbrance upon the land created before the work was commenced shall operate upon the building erected thereon until the lien in favor of the person doing the work shall have been satisfied; nor shall any lien or encumbrance upon the land created after the work was commenced operate on the land or such building until the lien in favor of the person doing the work shall have been satisfied."

As the lien asserted by Talley was for erecting a building, I have, in quoting the section, omitted so much as relates to repairs and furnishing materials, to which all the provisions of the section apply with equal force as to buildings.

It seems to me to be certain that the Legislature intended by the first clause of the section to limit the power of the person causing the building to be erected to his own interest in the land, and that he cannot encumber what he does not own. If this is correct, and I cannot doubt that it is, "the land" mentioned in the subsequent parts of the statute is the interest of the person causing the building to be erected, in the land on which

it is erected, and only that interest can be affected by or subjected to the lien.

The Valley Engine and Machine Company had no interest in the land except under an unrecorded deed from C. R. Moorman. By the express terms of section 2465 of the Code that deed was *void* as to the judgment creditors of C. R. Moorman; as to them the Engine and Machine Company had no interest, and therefore, by the express terms of section 2483, nothing could be subjected to the mechanic's lien.

The decree in this case practically determines that section 2465 is repealed by section 2483, *quoad* a mechanic's lien. I cannot think that such was the intention of the Legislature. The principle contained in section 2465 has been the law for nearly two centuries. See the act of 1705, 3 Hen. St. 318; 1 Rev. Code 1819, ch. 99; Code 1849, ch. 118, sec. 5.

The purpose of requiring recordation of deeds is to prevent frauds by concealing the true status of the title. This purpose has been consistently maintained by a well-regulated and well-understood system of law, for nearly two hundred years. Indeed, until the Code of 1819, the unrecorded deed did not pass the title between the parties thereto.

Repeals by implication are not favored in any case, and especially so where a long and well-established system, whose object is to prevent frauds and perjuries, will be interfered with. In such a case, an intention to repeal should not be presumed unless there is a positive repugnancy between the statutes, and no other reasonable construction can be placed upon the later act. *Davies* v. *Creighton*, 33 Gratt. 698; *Somers' Case*, 97 Va. 761.

The mechanic who is about to contract to erect a building can protect himself by examining the records and ascertaining the state of the title. If he purchases the lot, the law places that duty on him. Why not do so when he makes an investment on it as a basis of security? The first lines of section 2483 tell him he can get no lien on anything the person with whom he con-

tracts does not own.   Why, then, should he not be required to examine the title?

If the words "the land" in the second portion of section 2483 are held to mean, what I think they naturally mean, viz., "the interest of the person causing the building to be erected," there will be no conflict between the mechanic's lien law and the registry acts, and no conflict between the two clauses of section 2483.   The judgment in this case does not operate on the Engine and Machine Company's land or interest in land, but on C. R. Moorman's interest therein, because as to the judgment creditor the title or interest of C. R. Moorman never passed from him or vested in the company.   If, however, these words are construed to mean the real estate itself, then the section becomes self-contradictory, for he can bind what he does not own.   It is either that, or an unrecorded deed is valid and effective to vest an interest against the creditors of the grantor.

I think the decree should be affirmed.

BUCHANAN, J., dissenting:

I concur in the conclusion reached by the majority of the court, that the structures erected by the mechanic are not liable to the judgment lien sought to be enforced, but am of opinion that the lot upon which the structures were erected is liable, and upon that point dissent.

The object of the Legislature in enacting section 2483 of the Code was, as it seems to me, to give to the mechanic the first lien upon the structures erected by him, and also a lien upon his debtor's interest in the land upon which the structures were erected superior to all liens created after his lien attached.   It was never intended, I think, that the mechanic could subject for the payment of his debt any other or greater interest in the land than his debtor had in it.   If his debtor owned a life estate in the land, or any other estate less than the fee, only his interest,

whatever that interest was, could be subjected. If his debtor's interest in the land was subject to any infirmity when the mechanic's lien attached, his rights under the lien were subject to the like infirmity, whether that infirmity resulted from a failure to comply with the registry laws, or from some other cause.

This construction, I think, is justified by the language of section 2483, gives effect to all of its provisions, and secures to each party all that in equity and good conscience he is entitled to, without trenching upon the registry acts.

*Reversed.*